UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

LEONARD SERRANO,

    Plaintiff,

v.

LUIS RIVERA, ALAIN CASALES and
MIAMI-DADE COUNTY, FLORIDA,

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, LEONARD SERRANO ("Serrano"), files suit against Defendants, LUIS RIVERA ("Officer Rivera"), ALAIN CASALES ("Officer Casales") and MIAMI-DADE COUNTY, FLORIDA (the "County"), and states:

**JURISDICTION, VENUE AND PARTIES**

1. This is an action for damages and further relief to redress the deprivation of Serrano's constitutional rights by officials acting under color of State Authority and for damages arising from the deprivation of Serrano's privileges and immunities secured by the Constitution, statutes, regulations, policies, practices, customs and usages of the United States, and pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. The events resulting in the false arrest, intentional infliction of emotional distress and a violation of Serrano's civil rights pursuant to 42 U.S.C. §§ 1983 and 1988 occurred in Miami-Dade County, Florida.  Accordingly, the Southern District of Florida is the proper venue.

4. Serrano has exhausted all available administrative remedies and satisfied all conditions precedent to the filing of this Complaint, including providing notice to the County under Florida Statutes § 768.28.

5. Serrano is a resident of Miami-Dade County, Florida, *sui juris* and over 18 years of age.

6. Officer Rivera is a resident of Miami-Dade County, Florida, residing at 12797 SW 256th Terrace, Miami, Florida, is *sui juris*, over 18 years of age and a certified law enforcement officer in the State of Florida.  At all relevant times, Officer Rivera was employed as a law enforcement officer for the County.

7. Upon information and belief, Officer Casales is a resident of Miami-Dade County, Florida, is *sui juris*, over 18 years of age and a certified law enforcement officer in the State of Florida.  At all relevant times, Officer Casales was employed as a law enforcement officer for the County.

8. The County is located in the southeastern part of Florida, has a population exceeding 2,000,000, is the most populous county in Florida and is home to 35 incorporated cities.  The COUNTY has its own police department, and CASALES and CAMPOS were employed as law enforcement officers for the COUNTY at all relevant times.

## FACTUAL BACKGROUND

9. On or about March 12, 2014, Serrano, and recovery agent (repossessions) went to 12797 SW 256th Terrace, Miami, Florida (the "Residence"), based on information he had that Nester Hernandez, the co-buyer of a motor vehicle and believed to be the driver of said motor vehicle, lived there. Serrano and his employer had driven by the Residence before in search of the motor vehicle, and had previously seen a County police vehicle parked in the front yard at the Residence.

10. Serrano exited his vehicle and knocked on the front door of the Residence 3-4 times, but no one answered. Serrano was not armed when he exited his vehicle to knock on the front door of the Residence.

11. After no one responded to his knocks on the front door, Serrano returned to his vehicle, and after closing his vehicle's door behind him, Serrano retrieved his firearm from under his vehicle's seat and placed it back in its holster on his waist.

12. Serrano then began leaving the Residence in his vehicle.

13. As Serrano was leaving, a County police vehicle, driven by Officer Rivera, speedily made a right turn and hurriedly blocked in Serrano's car.

14. Officer Rivera hurriedly exited his County police vehicle and, with his gun drawn and pointed at Serrano, hurried approached Serrano and yelling at him.

15. Serrano told Officer Rivera that he (Serrano) was looking for Nester Hernandez, the co-buyer of a motor vehicle. Officer responded, stating he did not "give a fuck," and approached Serrano's driver's side of the vehicle, snatched Serrano

3

out of his vehicle, twisted Serrano's arm in an arm bar, forcefully slammed Serrano on the ground and removed Serrano's firearm from his person.

16. Officer Rivera handcuffed Serrano, and then after Serrano was handcuffed, Officer Rivera held his firearm to Serrano's head until his sergeant arrived.

17. After the sergeant arrived, Officer Rivera lifted Serrano up and positioned him towards the back of Serrano's vehicle, and then began lecturing Serrano about how wrong it was of him to go to that house at that time of day.  Serrano responded, stating that it was within his rights to go to the house at that time, and that he and his office were conducting an investigation.  Unhappy with Serrano's response, Officer Rivera and the sergeant then put Serrano in the backseat of the County police car that had been driven by Officer Rivera.

18. Officer Rivera then went back into Serrano's vehicle, grabbed Serrano's iPad, returned to Serrano and forced Serrano to show him (Officer Rivera) the order and information on how many times the address for the Residence had been searched.  Officer Rivera also had another officer (Officer Gio) copy all the information in the order.  Officer Rivera then stated that another agent came to the Residence previously, and that he himself had spoken to said agent.

19. Officer Rivera again started yelling at Serrano, threatening to have him charged with a felony, and also have him charged for stalking Officer Rivera's home. Officer Rivera then said that he could have shot and killed Serrano and gotten away with it.

20. Officer Rivera then stood in front of Serrano's vehicle and finally noticed Serrano's dash-cam, which video-recorded and audio-recorded the incident.

4

21. Officer Rivera then went inside Serrano's vehicle and began tampering with Serrano's dash-cam, and eventually figured out how to unplug it, and did just that – without consent or justification, Officer Rivera unplugged Serrano's dash-cam.

22. Officer Rivera had Serrano handcuffed in the backseat without air conditioning from approximately 2:00AM until approximately 6:00AM, as Officer Rivera and Officer Gio got food and Cuban coffee and hung out outside.

23. In Serrano's presence, Officer Rivera spoke to his sergeant telephonically, trying to create facts and manufacture evidence that would enable him to falsely charge Serrano with a crime.

24. Officer Rivera eventually transported Serrano to the police station around 7:00AM, but Serrano was still left to sit in the backseat of Officer Rivera's police vehicle until approximately 10:00am, still handcuffed with his hands behind his back.

25. While sitting in the backseat of Officer Rivera's police vehicle, Serrano was able to see and read Officer Rivera's report, and saw that Officer Rivera created facts and manufactured evidence to attempt to legitimize the arrest and enable him to falsely charge Serrano with a crime.

26. Serrano also overheard Officer Rivera speaking with an attorney from the State Attorney's Office, and the attorney telling Officer Rivera that Serrano could not be legitimately arrested and charged based on the facts Officer Rivera told said attorney.  While in Serrano's presence, Officer Rivera argued, "That cannot be right."

5

27. Disagreeing with the State Attorney's Office, Officer Rivera had Officer Casales arrested Serrano for "breach of the peace" and "carrying a firearm while on private property and performing duties under his license."

28. Criminal charges were filed by the State Attorney's Office for disorderly conduct. The charges were later dismissed after being nolle prossed by the State.

29. All presuit requirements have been satisfied, including the notice requirements under Florida Statutes § 768.28.

## I.

## 42 U.S.C. § 1983 SEIZURE CLAIM AGAINST OFFICER RIVERA

30. Serrano realleges and incorporates by reference the allegations set forth in Paragraphs 1 though 29 above as if fully set forth herein.

31. Officer Rivera proximately caused Serrano's seizure and detention in the absence of either arguable probable cause or probable cause that Serrano committed any criminal offense.

32. The actions of Officer Rivera, in causing the seizure and detention of Serrano in the absence of either arguable probable cause or probable cause, were taken in absence of lawful authority.  The actions of Officer Rivera constitute a seizure/false arrest of Serrano.

33. The false arrest of Serrano by Officer Rivera was committed in the course and scope of her employment as a police officer for the County.

34. As a direct and proximate result of the acts described above, Serrano has suffered grievously and has been brought into public scandal, with great humiliation, mental suffering and damaged reputation.

35. As a further direct and proximate result of the conduct of Officer Rivera, Serrano suffered loss of liberty and freedom, mental anguish, loss of earnings, and loss of capacity for the enjoyment of life.  Serrano's losses are either permanent or continuing and Serrano will suffer the losses in the future, in violation of Serrano's rights.

WHEREFORE, Serrano respectfully requests that this Court:

   a. Judgment for any and all damages recoverable under law against Officer Rivera;

   b. Judgment for punitive damages against Officer Rivera;

   c. Cost of suit;

   d. Reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

   e. Such other relief as this Court deems just and proper.

## II.
## 42 U.S.C. § 1983 SEIZURE CLAIM AGAINST OFFICER CASALES

36. Serrano realleges and incorporates by reference the allegations set forth in Paragraphs 1 though 29 above as if fully set forth herein.

37. Officer Casales proximately caused Serrano's arrest in the absence of either arguable probable cause or probable cause that Serrano committed any criminal offense.

38. The actions of Officer Rivera, in causing the arrest of Serrano in the absence of either arguable probable cause or probable cause, were taken in absence of lawful authority.  The actions of Officer Rivera constitute a false arrest of Serrano.

39. The false arrest of Serrano by Officer Rivera was committed in the course and scope of his employment as a police officer for the County.

40. As a direct and proximate result of the acts described above, Serrano has suffered grievously and has been brought into public scandal, with great humiliation, mental suffering and damaged reputation.

41. As a further direct and proximate result of the conduct of Officer Casales, Serrano suffered loss of liberty and freedom, mental anguish, loss of earnings, and loss of capacity for the enjoyment of life.  Serrano's losses are either permanent or continuing and Serrano will suffer the losses in the future, in violation of Serrano's rights.

   WHEREFORE, Serrano respectfully requests that this Court:

   a. Judgment for any and all damages recoverable under law against Officer Casales;

   b. Judgment for punitive damages against Officer Casales;

   c. Cost of suit;

   d. Reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

   e. Such other relief as this Court deems just and proper.

**III.**

**42 U.S.C. § 1983 MALICIOUS PROSECUTION AGAINST OFFICER RIVERA**

42. SAMMY realleges and incorporates by reference the allegations set forth in Paragraphs 1 though 29 above as if fully set forth herein.

43. No reasonably cautious police officer in the position of Officer Rivera would have believed Serrano was guilty-in-fact of any criminal offense.

8

44. Officer Rivera proximately caused criminal proceedings to be instituted or continued against Serrano with malice and in the absence of probable cause that Serrano committed any criminal offense by creating facts and manufacturing evidence for Officer Casales to include in his probable cause affidavit and offense report to be submitted to prosecuting authorities.

45. At all times material hereto, Officer Rivera knew that the information he gave to Officer Casales was materially false and, in fact, created and manufactured by Officer Rivera.

46. At all times material hereto, Officer Rivera knew that the information he gave to Officer Casales to include in the probable cause affidavit would be relied upon by prosecuting authorities for the institution and continuation of criminal charges against Serrano.

47. The conduct of Officer Rivera was reckless and without regard to whether the institution or continuation of criminal proceedings against Serrano were justified.

48. The criminal proceedings instituted and continued by Officer Rivera reached a bona fide resolution in Serrano's favor – the criminal charges were dismissed after the State Attorney's Office chose to not prosecute the case.

49. As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Serrano has suffered loss of liberty and freedom, and has been brought into public scandal, with great humiliation, mental suffering and damaged reputation.  Serrano also incurred significant attorney's fees to defend the heinous criminal charges, lost wages while incarcerated awaiting trial *and* has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Serrano respectfully requests that this Court:

a. Judgment for any and all damages recoverable under law against Officer Rivera;

b. Judgment for punitive damages against Officer Rivera;

c. Cost of suit;

d. Reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

e. Such other relief as this Court deems just and proper.

**IV.**

**FALSE ARREST CLAIM AGAINST THE COUNTY**

50. Serrano realleges and incorporates by reference the allegations set forth in Paragraphs 1 though 29 above as if fully set forth herein.

51. Officers Rivera and Casales proximately caused Serrano's arrest in the absence of either arguable probable cause or probable cause that Serrano committed any criminal offense.

52. The actions of Officers Rivera and Casales, in causing the arrest of Serrano in the absence of either arguable probable cause or probable cause, were taken in absence of lawful authority.  The actions of Officers Rivera and Casales constitute false arrest/false imprisonment of Serrano.

53. The false arrest of Serrano by Officers Rivera and Casales was committed in the course and scope of their employment as police officers for the County.

54. As a direct and proximate result of the acts described above, Serrano has suffered grievously and has been brought into public scandal, with great humiliation, mental suffering and damaged reputation.

55. As a further direct and proximate result of the conduct of the County, Serrano suffered loss of liberty and freedom, mental anguish, loss of earnings, and loss of capacity for the enjoyment of life.  Serrano's losses are either permanent or continuing and Serrano will suffer the losses in the future, in violation of Serrano's rights.

WHEREFORE, Serrano respectfully requests that this Court:

   a. Enter judgment for compensatory damages in his favor and against the County; and

   b. Enter judgment for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Serrano hereby demands a trial by jury.

Dated: January 13, 2016.                    Respectfully submitted,

                                            LOCKE LAW, P.A.
                                            Attorneys for Plaintiff
                                            8201 Peters Road, Suite 1000
                                            Plantation, Florida 33324
                                            (954) 382-8858 telephone
                                            (954) 827-0998 facsimile
                                            e-mail: wendell@lockefirm.com


                                            By: __/s *Wendell Locke*_____
                                                Wendell Locke, For the Firm
                                                Florida Bar No. 119260